**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| **ANNIE LUCILE LIVINGSTON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) **Case No.: 2:18-cv-2210-KHV-JPO** |
| **UNIVERSITY OF KANSAS HOSPITAL** | ) |
| **AUTHORITY,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**MOTION FOR LEAVE TO FILE AN AMENDED RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Pro Se, Annie Lucile Livingston, moves the Court to for an Order granting Plaintiff leave to file the attached Proposed Amended Memorandum in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment and that the Court will deem it as filed. In support of this motion, Plaintiff states as follows:

1. Plaintiff Pro Se filed a timely response to Defendant's Motion for Summary Judgment Friday, November 15, 2019 because she did not want to offend the Court by filing an untimely response.

2. The Court had granted Plaintiff three (3) extensions to file her response.

3. This is Plaintiff's first attempt to file a response to a motion for summary judgment with knowledge of the requirement.

4. Plaintiff is a first-year law student who severely under estimated the amount of time it would take to properly respond to Defendant's Motion for Summary Judgment.

5. On November 15, 2019, the Plaintiff was in the process of aligning three draft documents with her main document when the deadline to file came due.

6.  Plaintiff had three options: (1) to file a timely disjointed response (2) to file an untimely reasonably organize response, or (3) not file a response at all.

7.  Plaintiff's only viable option was to file the timely disjointed response because filing an untimely document or not filing a response would mean the Court would likely grant Defendant's Motion for Summary Judgment.

8.  Therefore, Plaintiff's best option was to file a timely disjointed response on November 15, 2018 and pray to the Court for forgiveness.

9.  Plaintiff Pro Se messed up and prays to the Court for forgiveness.

10. Granting Plaintiff leave to file an amended response will not cause any harm or undue delay in the proceedings in this case.

11. The trial date is set for May 4, 2020, which is still five months away.

12. Defendant has already requested an additional week to file a reply to the Plaintiff's original response and Plaintiff is willing to accommodate an additional request if necessary. **Exhibit 2.** Defendant's Request for Extension to Reply.

13. Granting the Pro Se Plaintiff's request will not be prejudicial to the Defendant in any way. The Defendant's privilege log activity from August 3, 2018 and August 8, 2018, shows that the Defendant has four experienced attorneys working on its behalf: (1) Counsel for the Defendant, Henry Thomas, the least experienced attorney, has six full years of experience practicing law, (2) Counsel for the Defendant, Eric Packel, has twenty-six years of experience practicing law, (3) Dan Peters, General Counsel for the Defendant, has twenty-four years of experience practicing law, and (4) Anita Bosch, Assistant General Counsel for the Defendant, is an experienced attorney. **Exhibit 3.**

Defendant's Privilege Log. Also see **Exhibit 4.** Attorney's and Decision Makers Public Profiles.

14. In comparison, Plaintiff Pro Se is a first-year law school student who requires accommodation. The Plaintiff will be emailing her accommodation assessment information directly to the Court for an in-camera review because she does not wish this private confidential sensitive information to be viewed by the public. The Court may disseminate the information as it deems proper.

15. In viewing the Defendant's privilege log, a reasonable inference can be made that Counsel for the Defendant, Henry Thomas, participated in the decision to terminate Plaintiff's employment. **Exhibit 3.** Privilege Log at August 3, 2018 at 10:21 a.m.

16. The Court has broad discretion in granting leave where justice so requires.

17. Plaintiff can definitely establish a prima facie case for retaliation, (1) the Plaintiff engaged in protected activity (2) the Plaintiff suffered adverse action and (3) there was a causal connection. The Plaintiff can also establish pretext by showing inconsistencies, incoherencies, and that the Defendant violated at least one written policy. Therefore, the Court should grant Plaintiff leave to file an amended response because justice so requires.

18. On July 25, 2018, the Plaintiff emailed Counsel for the Defendant, Henry Thomas, to request that he preserve her 2017 Evaluation for discovery because it was presented to her on July 24, 2018, but immediately taken back when the Plaintiff pointed out that the dates on the document had been altered from the self-evaluation that the Plaintiff submitted February 8, 2018. **Exhibit 5.** Henry Thomas Email July 25, 2018.

19. Plaintiff's employment was terminated on August 8, 2018, just two weeks after she asked that Mr. Thomas preserve her 2017 Evaluation. **Exhibit 6.** Termination Notice.

20. It was foreseeable that Plaintiff would request production of her 2017 Evaluation during discovery. **Exhibit 5.** Henry Thomas Email July 25, 2018.

21. Even though Plaintiff asked Mr. Thomas to preserve her 2017 Evaluation for discovery on July 25, 2018, when she requested the document at RFP# 159, Mr. Thomas mocked her request by producing a screen shot of Plaintiff's 2017 Performance Review instead of producing the actual document she asked him to preserve for discovery months earlier. **Exhibit 7.** Defendant's Responses to Plaintiff's Requests at RFP# 159.

22. The review period on Plaintiff's Self-Evaluation that she submitted February 8, 2018, was from 12/14/2017 to 01/15/2018 and the due date was 02/28/2018. **Exhibit 8.** Plaintiff's 2017 Self-Evaluation.

23. The review period on the screen shot produced by the Defendant shows that the dates were altered to reflect a review period of 06/15/2017 – 06/15/2018. **Exhibit 9.** Screen Shot at bates document number 000868.

24. The first page of the Performance Evaluation states: The 'Review Period' is the time frame the employee has to complete their self-review. The 'Due Date' reflects the date the evaluation should be completed in GPS (Defendant's Goal Performance System). The Supervisor did not send the Plaintiff her review for self-evaluation until January 2018. **Exhibit 8.** Plaintiff's 2017 Self-Evaluation at page 1 of 15.

25. The screen shot of Plaintiff's 2017 evaluation showed that some information on Plaintiff's 2017 evaluation had been altered and concealed. For example, on the self-evaluation that the Plaintiff submitted, the Plaintiff left the box unchecked which states

"By checking this box I am indicating that I have reviewed my current job description and I understand the requirements for my position." **Exhibit 8.** Plaintiff's 2017 Self-Evaluation at page 13 of 15.

26. At bates document page number 000878, the screen shot of the Plaintiff's 2017 Evaluation shows that the Plaintiff's response had been altered from an unchecked box to a checked box at "By checking this box I am indicating that I have reviewed my current job description and I understand the requirements for my position." **Exhibit 9.** Screen Shot at 000878**.**

27. The screen shot of the Plaintiff 2017 Evaluation concealed information in several areas of the document. Many of the Manager Comments incoherently stopped in the middle of sentences which were in the middle of pages and did not pick back up on the following pages. For example, Manager Comments read as follows throughout the document: "She works well when concepts are" **bates page at 000869**, "For example, when asked by the director to contact a potential volunteer (Karen" **at 000872**, "She was and is very organized when it comes to" **at 000874** "She also garnered a speaker from Emergency Medicine and" **at 000875,** "She was very organized when it comes to" **at 000876,** She also maintains the payroll system called Kronos, and does" **at 000877**, "She sometimes stumbles when it comes to effective and diplomatic communication, and often values for her" **at 000878**' "It has been my" **at 000878. Exhibit 9.** Screen Shot of Plaintiff's 2017 Evaluation.

28. The goal period on the standard evaluation form was correlated with the Defendant's fiscal year which ran from July 1st to June 30th. Therefore, the Plaintiff had aligned the goal dates on her self-evaluation with the Defendant's fiscal year.

29. The Plaintiff's start date for goal 2.1 was altered from 07/01/2016 on page 2 of 15 on the Self-Evaluation form to 6/15/2017 on the screen shot **at bates page 000869. Exhibit 8.** Plaintiff's 2017 Self-Evaluation at page 2 of 15, **Exhibit 9.** Screen Shot at 000869.

30. The status for goal 2.1 on the screen shot is illegible. While the status on the Plaintiff's self-evaluation for goal 2.1 shows completed. **Exhibit 9. Screen Shot at 000869. Exhibit 8.** Plaintiff's 2017 Self-Evaluation at page 2 of 15.

31. On October 11, 2017, Plaintiff's Supervisor called Plaintiff one of the department's top performers. **Exhibit 10.** Top Performer Email.

32. On October 25, 2017, Plaintiff's Supervisor emailed Plaintiff stating "You've done an outstanding job, Annie, and you'll see it reflected on your upcoming employee evaluation." **Exhibit 11.** Good Job Email.

33. Plaintiff filed an EEOC complaint against the Defendant in November 2017 and a Title VII lawsuit against the Defendant on April 30, 2018 while she was still employed by the Defendant. **Exhibit 16. EEOC Complaint, Exhibit 17. April 30, 2018, Lawsuit.**

34. On June 13, 2018, Plaintiff's Supervisor, Paula Gangel wrote on the meeting agenda to Vice President Jeff Novorr concerning Plaintiff , "[s]ent you Annie's GPS evaluation, I don't plan to give it to her unless directed by HR/legal counsel. **Exhibit 12.** June 13, 2018, Agenda.

35. The Plaintiff was an hourly employee. It can reasonably be inferred that but for retaliation, that the Plaintiff's 2017 Evaluation would be required to be scrutinized by the legal department prior to reviewing it with the employee.

36. Falsifying hospital documents is a violation of Company Policy 701, Employee Conduct and Corrective Action. The Plaintiff's 2017 Performance Review can reasonably be construed as a hospital document. **Exhibit 21.** Company Policy 701.

37. On July 26, 2018, Plaintiff's Supervisor admitted she falsified the dates on the Plaintiff's 2017 Evaluation. Supervisor Gangel wrote on the meeting agenda between Supervisor Gangel and her boss, Vice President Jeff Novorr, under section II. New Business, sub section A. Annie's Evaluation/Update on Current Behaviors: <u>Annual Evaluation</u>: "Chris Wilson (HR Employee Relations Manager) to (sic) reviewed and edited her annual evaluation. Chris directed me to change the review dates so that it's up to date-It was due February 28, 2018, and Chris advised me to change the due date to 6-15-18, which I did. When I presented it to Annie, she freaked out and said those were the wrong dates, and that they didn't match her form. At Chris's directive, I took the evaluation back to correct the dates." **Exhibit 13.** July 26, 2018, Agenda.

38. On July 24, 2018, immediately before presenting the Plaintiff with her 2017 Evaluation, Plaintiff's Supervisor Paula Gangel and HR Employee Relations Manager Chris Wilson signed off on a document stating the Plaintiff had successfully completed a 30-day action plan which included communication as one of the areas in which the Plaintiff was deemed successful. **Exhibit 20**. Successful Completion Action Plan.

39. The screen shot of Plaintiff's 2017 Evaluation showed a score of 2.0 out of 5.0 in communication. Five is the highest. **Exhibit 9.** Screen Shot at 000872-873.

40. A reasonable inference can be made that the screen shot was unlawfully altered to show a low score to justify the termination. Likewise, a reasonable inference can be made

that the actual 2017 Performance Review that was presented to the Plaintiff and immediately taken back on July 24, 2018, was favorable to the Plaintiff.

41. A reasonable inference can be made that Mr. Henry Thomas was aware that the screen shot was not an accurate reflection of the actual document that was presented to the Plaintiff on July 24, 2018, and he willfully produced an unlawfully altered and concealed screen shot.

42. The Defendant's Performance Appraisal, 183 Policy states performance review periods may not exceed eighteen months. The policy also requires that the supervisor complete the appropriate review documents in advance of the review date. **Exhibit 14.** Performance Appraisal, 183 Policy.

43. The 2016 Performance Review performed in October 2016 was the only performance review the Defendant conducted on the Plaintiff. **Exhibit 15.** Plaintiff's 2016 Performance Review.

44. The Defendant violated the its 183 Policy by not completing the review documents in advance of the review date which was February 28, 2018. The Defendant violated its Policy 183 because there were more than eighteen months between October 2016 Performance Review and Plaintiff's termination on August 8, 2018.

45. August 28, 2018, the Court instructed the Plaintiff to familiarize herself with the Rules of Professional Conduct – Kansas Judicial Branch.

46. In producing the screen shot which contained unlawfully altered and concealed information, Counsel for the Defendant, Henry Thomas, violated Rule 226 Kansas Rules of Professional Conduct. 3.4 Advocate: Fairness to Opposing Party. A lawyer

shall not (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value.

47. Counsel for Defendant, Henry Thomas, violated Rule 226 Kansas Rules of Professional Conduct. 3.4 Advocate: Fairness to Opposing Party. A lawyer shall not (d) in pretrial procedure, … fail to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party.

48. Specifically, in RFP#'s 40, and 42, the Plaintiff requested the employee personnel files for the Defendant's hourly employees Wendy Colling, and Carter Clough. Although Plaintiff sated in paragraphs four (4) and seven (7) of her amended complaint that she was disciplined differently than Caucasian employees Colling and Clough, Mr. Thomas refused to produce their HR files stating that the Defendant's hourly employees were third parties. **Exhibit 7** Defendant's Responses to Plaintiff's Requests at RFP# 40,42.

49. Counsels for the Defendant violated Fed. R. Civ P. 30(d)(1) by deposing the Plaintiff for twelve hours from 9:00 a.m. until 9:00 p.m. without stipulation or Court order. Three attorneys, Henry Thomas, Eric Packel, and Anita Bosch, Assistant General Counsel for the Defendant, were present on behalf of the Defendant, at the Plaintiff's deposition. Without consulting with the Plaintiff to gain informed voluntary consent, Eric Packel unilaterally made a decision that the deposition would continue beyond the lawful duration of seven (7) hours**. Exhibit 13.** Plaintiff's Depo. 5:1; 452: 10.

50. At 6:00 p.m., when the Court Reporter asked how long the deposition would go on, Mr. Packel replied: she's (Plaintiff) from Florida, unless she can come back next week, we need to continue. The Plaintiff stated I'm not coming back next week, but there was no discussion about the legal duration limit set forth in Fed. R. Civ P. 30(d)(1). The

deposition continued an additional three hours with only one forty-five-minute meal break a 11:30 a.m.  The Plaintiff, a student with limited funds, was compelled under duress to participate in the unlawful deposition that went beyond the lawful duration.

51. The twelve-hour deposition transcript cost $1000.00, which made it too expensive for the Plaintiff to purchase. The Court Reporter refused to sell the Plaintiff pages from the deposition transcript. Defendant eventually provided Plaintiff a copy of the transcript after stringing her along for three weeks. **Exhibit 19.** Request for Depo Emails.

**52.** Counsel for Defendant violated Fed. R. Civ. P. 26(b)(1) when he produced less than 1% (17 out of 250) of the Plaintiff's proper requests for production of documents. Mr. Thomas basically mocked Plaintiff's proper requests for production of documents.

**53.** Plaintiff simply ask the Court for an opportunity to be heard.

54. Now, for good cause, Plaintiff prays the Court will grant her leave to file the attached Proposed Amended Memorandum in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment and that the Court will deem it as filed.

WHEREFORE, for these reasons, Plaintiff prays for an Order granting Plaintiff leave to file the attached Proposed Amended Memorandum in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment and that the Court will deem it filed.

Dated this 5th  day of  December 2019.

Respectfully Submitted,


/s/ Annie L. Livingston
Annie L. Livingston
9321 Everhart Rd
Riverview, FL 33578
Email:  allivingston18@gmail.com

PLAINTIFF PRO SE

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 5th day of <u>December 2019</u>, the foregoing was filed with the Clerk of the Court via the Court's eFiling System, which sends notice of electronic filing constituting service to the following:

Eric E. Packel (KS #26246)
Henry J. Thomas (KS#23070)
900 W. 48th Place, Suite 900
Kansas City, MO 64112
(816) 753-1000
Fax: (816) 753-1536
<u>epackel@polsinelli.com</u>
hthomas@polsinelli.com

**ATTORNEYS FOR DEFENDANT**

By: <u>/s/ Annie L. Livingston        </u>
**PLAINTIFF PRO SE**

2Ch19.5